UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMERCE & INDUSTRY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 12-CV-7668 |
| | ) |
| MONTCLAIR HOTELS CALIFORNIA, LLC and MONTCLAIR HOTELS INVESTORS, LLC | ) Judge John W. Darrah<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Commerce & Industry Insurance Company ("Commerce & Industry") has filed suit against Montclair Hotels California, LLC ("MHC") and Montclair Hotels Investors, LLC ("MHI") (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim.

### BACKGROUND

The following facts are based on Plaintiff's Amended Complaint and attached exhibits and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Commerce & Industry has attached to its Complaint documents, including a copy of the two insurance policies at issue and an audit invoice. Exhibits attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Commerce & Industry is an insurance company organized and authorized to transact insurance business under the laws of New York, with its principal place of business in New York. (Am. Compl. ¶ 1.) MHC is an Illinois limited liability company, with its principal place of business in Illinois and comprised of members Peter Cyrus and Dennis Langley. (*Id.* ¶ 2.) MHI is an Illinois limited liability company, with its principal place of business in Illinois and comprised of members Peter Cyrus and Dennis Langley. (*Id.* ¶ 3.) MHI purchased the assets of MHC. (*Id.* ¶ 31.) MHI, as successor of MHC, assumed all of MHC's liabilities. (*Id.* ¶ 37.)

On or about July 1, 2003, Commerce & Industry issued MHC two workers' compensation policies, WC124889 ("Policy 1") and WC1241890 ("Policy 2"). (*Id.* ¶ 11.) Both policy periods ran from July 1, 2003 to July 1, 2004. (*Id.*) Workers' compensation policy premiums are based on payroll information of an insured during the course of the policy period. (*Id.* ¶ 12.) In 2003, MHC sought workers' compensation coverage from Commerce & Industry. (*Id.* ¶ 10.) Because MHC's final payroll amounts could not be determined with certainty until after the end of each policy period, Commerce & Industry billed MHC an initial "estimated premium" at the beginning of each policy period. (*Id.* ¶ 12.) Both policies state that the premium initially charged "is an estimate" and the "final premium will be determined after [the] policy ends by using the actual" payroll determined by an audit. (*Id.* ¶ 12, Exs. A & B.) Under both policies, Commerce & Industry had the right to conduct the audit during regular business hours during the policy period and within three years after the policy period ended. (*Id.* ¶ 13, Exs. A & B.)

Pursuant to the terms and conditions of the policies, MHC paid Commerce & Industry an estimated premium. (*Id.* ¶ 14.) MHC accepted the insurance coverage of the policies, which required MHC to pay all premiums due. (*Id.* ¶ 15.) Pursuant to Policy 1, Commerce & Industry conducted an audit of MHC's books and records relating to Policy 1. (*Id.* ¶ 17.) In the Policy 1 audit, Commerce & Industry found that MHC owed $1,425,281.00 in additional insurance premium. (*Id.* ¶ 18.) Pursuant to Policy 2, Commerce & Industry conducted an audit of MHC's books and records relating to Policy 2. (*Id.* ¶ 19.) In the Policy 2 audit, Commerce & Industry found that MHC owed $29,988.00 in additional premium. (*Id.* ¶ 20.) Commerce & Industry fully performed all necessary conditions of the policies. (*Id.* ¶ 16.) On or about October 5, 2011, Commerce & Industry issued an invoice to MHC for the additional premium due. (*Id.* ¶ 21.) The total owed by MHC for the policies is $1,455,269.00. (*Id.* ¶ 22.) MHC has not paid the premiums to Commerce & Industry. (*Id.* ¶ 41.)

In Count I, Commerce & Industry brings a breach-of-contract claim against MHC, and MHI, "by virtue of its status as successor of MHC." (*Id*. ¶¶ 38-43.) In Count II, Commerce & Industry brings a claim for successor liability against MHI, alleging that MHI is the successor to MHC and thereby assumed all of MHC's liabilities. (*Id*. ¶¶ 44-49.) Commerce & Industry seeks judgment against MHI and MHC, jointly and severally, in the amount of $1,455,269.00, plus costs, expenses, prejudgment and postjudgment interest, and any equitable relief. (*Id.* ¶ 43.)

**LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (*Tamayo*) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

**ANALYSIS**

Defendants moves to dismiss Commerce & Industry's Amended Complaint. To state a claim for breach of contract under Illinois law, [1] a party must allege the following: (1) that a valid contract exists; (2) that the plaintiff performed its contractual duties; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged by the defendant's breach. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Defendants argue that Commerce & Industry's Amended Complaint "is so utterly devoid of any facts entitling Plaintiff to relief, it is also impossible for Defendants to construct an answer." (Mot. at 2.) Contrary to Defendants' position, Commerce & Industry has sufficiently stated the elements of a breach-of-contract claim. Commerce & Industry alleges the existence of two valid and enforceable insurance contracts; that Commerce & Industry performed its contractual duties; that Defendants failed to pay the required premiums to Commerce & Industry; and that Commerce & Industry has suffered damages in the amount of $1,455,269.00 (excluding costs).

Defendants further contend that Commerce & Industry has failed to include details regarding the audits, such as the dates and places of the audits and what books and records were examined for the audits. Commerce & Industry is not basing its claims on the audits themselves but has pleaded that the audits were the means that Commerce & Industry used to calculate the unpaid insurance premiums. (*See* Am. Compl. ¶ 12.) Commerce & Industry has included sufficient details regarding the audit

---

[1] The parties do not appear to dispute that the substantive law of Illinois governs this lawsuit based on diversity jurisdiction. *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32 (7th Cir. 2009).

to place Defendants on notice of its breach-of-contract claims. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (noting that Rule 8(a)(2) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court.") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). In sum, Commerce & Industry's allegations have "provide[d] the [D]efendants with sufficient notice to begin to investigate and defend against [Commerce & Industry's] claim." *Tamayo*, 526 F.3d at 1085.

Defendants also argue that Commerce & Industry's audits are "time-barred." (Mot. at 4.) Defendants argue that because the policies expired on September 1, 2004, an effective audit must have been conducted by September 1, 2007, because the policies "permit an audit when conducted within three years of the termination of the policy." (*Id.*) Defendants point out that Commerce & Industry's invoice is dated October 5, 2011, more than three years after the expiration of the policies. (*Id.*) Commerce & Industry argues in response that the policies do not require it to finalize an audit and submit the invoice within a three-year time frame. (Resp. at 5-6.)

Whether or not the audits were timely conduced is a factual issue that is not properly resolved at the pleading stage. In any event, the allegations in Commerce & Industry's Amended Complaint must be construed in the light most favorable to Commerce & Industry and all reasonable inferences are drawn in favor of Commerce & Industry. Although Commerce & Industry's audit is dated in 2011, a reasonable inference could be drawn that the audits were conducted in 2007.

6

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for Failure to State a Claim [11] is denied.

Date:     March 26, 2013                                JOHN W. DARRAH
                                                                             United States District Court Judge